```
               IN THE UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY


JAMES BAKER,                    :    HONORABLE JOSEPH E. IRENAS
                                :
            Plaintiff,          :    CIVIL ACTION NO. 04-4966 (JEI)
                                :
       v.                       :
                                :              OPINION
DEVON BROWN, ET AL.,            :
                                :
            Defendants.         :
                                :
```

**APPEARANCES:**

JAMES BAKER
1058 Bond Street, 2d Floor
Elizabeth, NJ 07201
          *Pro Se*

OFFICE OF THE NJ ATTORNEY GENERAL
By:  Nicole M. Ahmed, Esq.
     Nicole Schreiner Morris, Esq.
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

and

STATE OF NEW JERSEY
By:  Susan Marie Scott, Esq.
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
          Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiff commenced this action on October 7, 2004, against 24 employees of the New Jersey Department of Corrections (the "DOC") in their personal and official capacities, pursuant to 42

U.S.C. § 1983.  Plaintiff claims that Defendants violated his First, Eighth, and Fourteenth Amendment rights.  Defendants filed a Motion for Summary Judgment on June 13, 2006.  For the reasons set forth below, the Court will grant the motion in part, and deny the motion in part.

**I.**

Plaintiff, James Baker, is a former New Jersey inmate who was incarcerated from December 4, 1987 through October 8, 2004 for robbery, criminal attempt, and kidnaping.[1]  (Hardrick Aff.). During the period of his incarceration, Plaintiff was housed at various institutions throughout the State.  (*Id.*)

This action is brought against 24 different Defendants, all of whom are sued in their individual and official capacities. (Compl. at ¶¶ 3-12).  Defendant Devon Brown is the former Commissioner of the DOC.  Defendant James Barbo is the Director of the DOC.  Defendants Jack Osvart and Kathy Ireland are Disciplinary Hearing Officers, and are employees of the DOC.

Defendant Kathy MacFarland is the Administrator of

---

[1] Plaintiff is proceeding *pro se*.  For this summary judgment motion, Defendants submitted both a brief and a record of evidence, which includes Plaintiff's deposition testimony. (Docket No. 30, 32).  Plaintiff submitted only a brief, with no accompanying evidentiary record.

Neither brief provided the Court with a clear pictures of the facts.  The Court must reconstruct the facts from the record.

Southwoods State Prison ("Southwoods").  Defendants Keith Arch and John Mourovich are the Superintendents of the same facility.  Defendants Sgt. John Dempsey, Sgt. Jennifer Watson, Correction Officer ("CO") Casey Piatt, CO Michael Gallagher, CO Joseph Mott, and CO Michael Williams are officers at Southwoods.  Defendant Sue Dolbow is the librarian at Southwoods and a DOC employee.

Defendant Sally Scheidemental is the Superintendent of Riverfront State Prison ("Riverfront").  Defendants Sgt. Aaron Johnson, CO Michael Sanders, and CO Andrew Fulton are officers at Riverfront.  Defendant Ellen Hodges is a teacher at Riverfront and is an employee of the DOC.[2]

Throughout Plaintiff's incarceration, he was transferred numerous times.  In March 2001,[3] Plaintiff was transferred from Northern State Prison to Riverfront.[4]  (Baker Dep., at 14:3-7).  On April 19, 2002, Plaintiff was issued a disciplinary infraction for indecent exposure, being in an unauthorized area, and

---

[2] Defendants Vernon Johnson, CO M. Blount, Lieutenant Lambert, Sgt. Nemeth and Threats were not served with process.

[3] Plaintiff testified in deposition that he was transferred to Riverfront in March 2003.  This is clearly a mistake because he subsequently testified that he was transferred from Riverfront to East Jersey State Prison in April 2002. (Baker Dep., at 14:11-14).  The Court ascertained the transfer date of March 2001 from the pleadings.  (*See* Compl. ¶ 90).

[4] Plaintiff claims that harassment and retaliation began in November 1997.  At that time, he was an inmate at Northern State Prison.  (Compl. ¶ 2).  None of the named Defendants, however, were employed by Northern State Prison.

disruptive conduct.  (*Id.* at 31:10-19).

Plaintiff was found guilty of these charges by Defendant Osvart.  He appealed to Defendant Sally Scheidemental, who upheld the guilty charge.  (Baker Dep., at 31:24-32:10).  Plaintiff subsequently appealed to the Appellate Court, which also upheld the charges.  (*Id.* at 33:4-7).  Plaintiff claims that Defendants Osvart and Scheidemental denied his right to due process because certain (unidentified) documents were not considered during the hearing or submitted on appeal.  (*Id.* at 31:2-5, 56:4-58:8).  Plaintiff did not file an Administrative Remedy Form ("ARF") against Defendants Osvart and Scheidemental.  (*Id.* at 79:12-15).

Plaintiff claims that Defendant Johnson, who filed the indecent exposure charge against Plaintiff on April 19, 2002, falsified the charge to retaliate against him for complaining.  (Baker Dep., at 41:5-19).  Plaintiff did not file an ARF against Defendant Johnson.  (*Id.* at 41:20-23).

Plaintiff claims that Defendant Fulton, who charged him for being in an unauthorized area, falsified the charge to retaliate against him for complaining.  (Baker Dep., at 48:4-10).  Plaintiff did not file an ARF against Defendant Fulton.  (*Id.* at 49:15-17).  Plaintiff also claims that Defendant Sanders engaged in similar retaliation, but did not file an ARF against him either.  (*Id.* at 50:2-4, 14-16).

Plaintiff claims that he had requested to enroll in a

4

computer class taught by Defendant Hodges, but was denied enrollment. (Baker Dep., at 54:13-17). He subsequently filed a complaint against her. Plaintiff alleges that Defendant Hodges retaliated against him for the complaint by falsely reporting to Defendant Johnson regarding the indecent exposure charge. (*Id.* at 54:7-11). Plaintiff wrote a complaint about this alleged retaliation, but was unsure whether he filed an ARF against Defendant Hodges. (*Id.* at 54:9-12).

Plaintiff was transferred from Riverfront to East Jersey State Prison in April, 2002, and from East Jersey State Prison to Southwoods in June, 2002. (Baker Dep., at 14:11-23).

Plaintiff sent a letter to Defendant Barbo sometime before July 28, 2003,[5] regarding the alleged assault of another inmate, Eric Patterson, by Defendants Dempsey and Gallagher. (*Id.* at 22:17-21, 25:7-11).

According to Plaintiff, Defendant Dempsey retaliated against him because of the letter. Plaintiff claims that on June 1, 2003, Defendant Dempsey went to Plaintiff's cell, screamed at him for no reason, and then, with the help of Defendant Piatt and another officer, took him to the social worker's office. (Baker Dep., at 34:11-16). In the office, Defendants Dempsey and Gallagher allegedly threatened Plaintiff not to reveal any

---

[5] The only information in Plaintiff's deposition regarding the date of this letter is that it was before July 28, 2003.

information about Eric Patterson. (*Id.* at 34:19-24). Specifically, Plaintiff claims that Defendant Gallagher told him that he would not be able to receive parole in 2004. (*Id.* at 42:12-17). Plaintiff submitted an ARF against Defendants Dempsey, Gallagher and Piatt. (*Id.* at 79:16-22).

About June 2, 2003, Plaintiff claims that Defendants Dempsey and Piatt went into his cell and stole legal documents. (Baker Dep., at 38:10-15). Subsequently, he was moved to a different cell. While there, Defendants Watson and Williams allegedly planted a weapon in his cell. (*Id.* at 39:10-18). He also claims that Defendant Williams tampered with his mail, opened his remedy forms and the answers to his remedy forms. (*Id.* at 69:17-24).

After the weapon was found in his cell, Plaintiff was handcuffed by Defendant Mott. He claims that Mott applied excessive force by cuffing him too tightly. (Baker Dep., at 60:20-21). Plaintiff did not file an ARF against Defendant Mott (*Id.* at 81:11-14), but did file it against Defendant Watson. (*Id.* at 79:22-25). Plaintiff complained to Internal Affairs about Defendants Piatt and Williams, but it was unclear whether he filed an ARF. (*Id.* at 43:21-44:4, 46:13-17).

On August 3, 2003, Plaintiff was charged with possessing a weapon (a "shank"). (*Id.* at 60:6-8). He was initially found guilty by Defendant Ireland. (*Id.*, at 58:11-20). The guilty

6

finding was upheld by Defendant Morouvich.  (*Id.*, at 59:11-14).[6] Plaintiff claims that Defendants Ireland and Morouvich violated his due process rights by failing to consider part of the evidence.  (*Id.* at 59:1-6).  Plaintiff did not file an ARF against Defendants Ireland and Mourovich.  (*Id.* at 81:4-8).

Plaintiff claims that Defendant Dolbow, the prison librarian, retaliated against him for his previous complaints against her.  He claims that she fabricated charges that Plaintiff threatened her, a charge for which he was found guilty and the finding upheld by the appellate court.  (Baker Dep., at 51:18-52:25).  He did not file an ARF against Defendant Dolbow for this charge.  (*Id.* at 53:1-6).

Plaintiff claims that Defendants MacFarland and Arch were aware of the retaliation against him, and did nothing to eliminate it.  (Baker Dep., at 27:2-14, 28:19-29:13).  Plaintiff did not submit ARFs against these Defendants.  (*Id.* at 79:6-11).

In September 2003, Plaintiff was transferred to East Jersey State Prison.  Plaintiff claims that Defendant Mott harassed him by failing to list Plaintiff's medical braces on the inventory slip and not including them in his property.  (Compl., at ¶ 183). Plaintiff did not file an ARF against Defendant Mott.

Plaintiff claims that he has written letters to Defendants

---

[6] The weapon charge was appealed to the appellate court and remanded.  The charge was dismissed on remand.

Brown and Barbo to complain about the retaliation he experienced, and that the letters were ignored.  He did not file ARFs against these Defendants.  (Baker Dep., at 78:1-25).

Plaintiff commenced this action on October 7, 2004, pursuant to 42 U.S.C. § 1983, seeking $275,000 in compensatory damages and $2.5 million in punitive damages.  Defendants moved for summary judgment on June 13, 2006.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "[A] party opposing a properly supported motion for summary judgment may not

8

rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004).

Allegations in the pleadings that are not supported by evidence are insufficient for summary judgment purposes. *See* Fed. R. Civ. P. 56(e) ("...an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading...").

### III.

#### A.

The Prison Litigation Reform Act of 1996 ("PLRA") requires a prisoner asserting a federal claim under 42 U.S.C. § 1983 to first exhaust his administrative remedies. See 42 U.S.C. § 1997e(a). Specifically, § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

9

The exhaustion requirement set forth in § 1997e is an affirmative defense. *Jones v. Bock*, 127 S. Ct. 910, 919 (2007). Therefore, burden of pleading and proving non-exhaustion rests with Defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Defendants must establish the affirmative defense by a preponderance of the evidence. *See Cardenas v. Massey*, 269 F.3d 251, 266 (3d Cir. 2001).

The exhaustion requirement applies to prisoners who filed their complaints while incarcerated. *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002). In *Ahmed*, the Third Circuit held that the strictures of the PLRA would not have applied if the plaintiff "had filed a timely complaint after his release from prison." *Id.* However, because he filed the complaint prior to his release, the exhaustion requirement applied to him. *Id.*

The exhaustion requirement is mandatory, even if the available administrative processes cannot grant the prisoner's desired remedy. *Booth v. Churner*, 532 U.S. 731 (2002). The Third Circuit has held that exhaustion requirement does not contain a futility exception. *Fulton v. United States*, 198 F. App'x 210, 214-15 (3d Cir. 2006) (citing *Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000)).

The Supreme Court recently held that if a complaint includes both exhausted and unexhausted claims, the Court may only dismiss the unexhausted claims. *See Jones*, 127 S. Ct. at 924 (rejecting

the "total exhaustion" theory).

The DOC has a departmentally approved procedure for resolution of complaints by inmates. This procedure consists of a 3-level Inmate Request, Interview, Administrative Remedy and Grievance Process. (Dutch Aff., ¶ 6). All inmates are required to utilize this procedure to resolve complaints, concerns, questions, and problems relative to issues or conditions under the jurisdiction of the DOC that affect them personally. (*Id*. at ¶7).

The inmate invokes this procedure by filing an ARF. Generally, the DOC takes thirty days to process the administrative remedy forms. (Dutch Aff., ¶10). The inmate's remedies have been exhausted when he or she receives the response to the ARF. (*Id*.).

This procedure is not formally adopted through regulations by the DOC. Nevertheless, Third Circuit precedent holds that it is considered an "administrative remedy" within the scope of the exhaustion requirement of § 1997e(a). *Concepcion v. Morton*, 306 F.3d 1347, 1355 (3d Cir. 2002).

In this case, Plaintiff was required to exhaust his administrative remedies before filing an action with this Court. It is undisputed that Plaintiff was incarcerated until October 8, 2004 (Hardrick Aff.). It is also undisputed that he filed his complaint on October 7, 2004. Thus, Plaintiff was a prisoner

11

when he filed his complaint, and the exhaustion requirement of the PLRA applies to him.  *See Ahmed*, 297 F.3d at 210.

It is also undisputed that Plaintiff never filed ARFs against Defendants Scheidemental, Osvart, Johnson, Fulton, Sanders, Hodges, Mott, Ireland, Mourovich, Dolbow, MacFarland, Arch, Barbo, and Brown.  As result, he failed to exhaust his administrative remedies.  Plaintiff argues that he need not file the ARFs because they would be futile.[7]  (Pl. Br., at p. 8).  However, as noted above, the law does not recognize a futility exception for the exhaustion requirement.[8]  *See Fulton*, 198 F. App'x at 214-15.

Because Plaintiff failed to exhaust his administrative remedies against these Defendants, the Court will grant summary judgment in these Defendants' favor.

The remaining Defendants claim that while Plaintiff testified in his deposition that he filed ARFs against them, the

---

[7] Plaintiff's brief cites to various records such as "Ex, R,1,2,3, K,1,2,3."  (Pl. Br., at p. 8).  However, Plaintiff did not submit an evidentiary record, and the Court cannot determine which documents, if any, Plaintiff references.

[8] An exception to the exhaustion requirement exists in cases when the prisoner has no available administrative remedies.  For example, when the prison officials denied a prisoner the necessary grievance forms, the Third Circuit has held that the prisoner did not need to exhaust his administrative remedies.  *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  This is not the case here.  Plaintiff neither alleges, nor produced any evidence showing, that he was denied administrative remedies.  In fact, he filed ARF against some, but not all, Defendants.

DOC has no record of any such remedy forms.  (Df. Br., at p. 13). However, failure to exhaust administrative remedies is an affirmative defense, and Defendants bear the burden to establish it.  *See Jones*, 127 S. Ct. at 919; *Ray*, 285 F.3d at 295; *Cardenas*, 269 F.3d at 266.  Defendants cannot establish this affirmative defense without presenting some credible evidence. The Court believes that Plaintiff has exhausted his administrative remedies against Defendants Watson, Williams, Gallagher, Dempsey, and Piatt.

**B.**

Plaintiff claims that Defendants[9] violated his Eighth Amendment rights.  Plaintiff's claims are based on his testimony that Defendants Dempsey, Gallagher, and Piatt threatened him because of his letter regarding Eric Patterson's assault (Baker Dep., at 34:11-16, 34:19-24), and that Defendants Watson and Williams planted a weapon in his cell (*Id*. at 39:10-18).

The Eighth Amendment protects prison inmates from cruel and unusual punishment.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825 (1994).  Defendants violate the Eighth Amendment when "an inmate is deprived of 'the minimal civilized measure of life's

---

[9] Because the Court granted summary judgment in favor of Defendants against whom Plaintiff failed to exhaust his administrative remedies, the remaining discussion will focus only on Defendants Watson, Williams, Gallagher, Dempsey, and Piatt.

necessities.'" *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). At minimum, Plaintiff must make a reasonable showing that the actions of Defendants may endanger him or threaten his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety. *See Torisky v. Schweiker*, 446 F.3d 438, 444 (3d Cir. 2006).

It is also well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. *Robinson v. Taylor*, 2006 WL 3203900, *1 (3d Cir. Nov. 7, 2006) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)).

Assuming Defendant Dempsey, Gallagher, and Piatt threatened Plaintiff, such a threat is a verbal assault, and cannot support an Eighth Amendment claim. *See Robinson*, 2006 WL 3203900, at *1. In addition, planting a weapon in Plaintiff's cell in no way threatens his basic human needs, and Plaintiff presented no evidence to that effect. *See Torisky*, 446 F.3d at 444. The Court will grant summary judgment with respect to the Eighth Amendment claims in favor of all remaining Defendants.

## C.

Plaintiff claims that Defendants retaliated against him for

14

writing a letter to the DOC regarding the alleged assault of Eric Patterson. He claims that as result of the letter, he was threatened by Defendants Williams, Gallagher, and Piatt (Baker Dep., at 34:11-16, 34:19-24), and that Defendants Watson and Williams planted a weapon in his cell (*Id*. at 39:10-18).

A prisoner alleging retaliation must show: (1) constitutionally protected conduct; (2) an adverse action by prison officials that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

The parties do not dispute the first two factors. Defendants claim that Plaintiff failed to establish that their actions are causally linked to Plaintiff's writing the letter. However, Plaintiff testified in his deposition, regarding the threat he received from Defendants Dempsey, Gallagher, and Piatt, that:

> Then on June 1st, 2003, Dempsey came over to my unit for no reason at all, screamed at me and told me to get off the phone and called three other officers to escort me over to another unti and placed me in the social worker's office at this [time]. At this time, Sergeant Dempsey, Officer Piatt, and Officer Yaccavelli stood outside of the social worker's office while Gallagher was in the office threatening me that if I bring this information to anybody else about Inmate Patterson, that I will not go home in 2004 and that he knows prosecutors, he'll make sure I get three strikes.

15

(Baker Dep., 34:11-24).

For summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock*, 794 F.2d at 864. The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Plaintiff's testimony establishes that he was threatened, and that the reason for the threat was the letter regarding Eric Patterson. This testimony leads to a reasonable inference that the three Defendants threatened Plaintiff in retaliation for his letter.

Regarding Defendants Watson and Williams, Plaintiff testified that he did not see either of them plant the weapon in his cell. (Baker Dep., at 38:20-23, 45:4-5). However, the reason that Plaintiff believes these Defendants planted the weapon was that both Defendants were in the unit's office while he was outside, and that they were the ones who found the weapon. (*Id.,* at 39:10-18). Plaintiff also testified that when he walked past the office, he heard Defendant Williams telling Defendant Watson that the unit supervisor came by because Plaintiff had filed a complaint. About two hours after the comment, Defendants found the weapon. (*Id.* at 45:18-46:3).

Plaintiff was found guilty for the weapon possession charge. (Baker Dep., at 47:7). This finding of guilt was subsequently

16

upheld by the prison administration, but an appellate court reversed and remanded.  After remand, Plaintiff took a polygraph test and passed it.  The charge was dismissed on remand.  (*Id.*, at 47:10-15).

Plaintiff's testimony creates a reasonable inference that Defendant Watson and Williams could have planted the weapon to retaliate against him for the Eric Patterson letter and the complaint.[10]  Although Plaintiff's retaliation claim may ultimately not succeed on the merits, it is not "indisputably meritless," "fantastic or delusional," "of little or no weight," or "trivial."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  As the Third Circuit noted, courts should "take seriously [their] charge to construe *pro se* complaints nonrestrictively."  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

The Court will deny summary judgment with respect to the retaliation claims against Defendants Gallagher, Dempsey, Piatt, Watson, and Williams.

---

[10] Of course, government officials generally are granted a qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  However, if the allegations were true in this case, the remaining Defendants cannot argue that their actions were reasonable and that they would be entitled to qualified immunity.

17

**IV.**

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part.  The Court will issue an appropriate order.


Date: March 13, 2007


                                                 s/*Joseph E. Irenas*
                                        JOSEPH E. IRENAS, S.U.S.D.J.